## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID DISTEFANO | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-6745 |
| MACY'S RETAIL HOLDINGS, INC. | : | |

**NORMA L. SHAPIRO, J.**                                            **MARCH 31, 2014**

### MEMORANDUM

Plaintiff David DiStefano ("DiStefano"), alleging false arrest, false imprisonment, and malicious prosecution, filed a complaint in the Court of Common Pleas of Philadelphia County on October 24, 2012.  Defendant Macy's Retail Holdings, Inc. ("Macy's") removed the action to this court on December 3, 2012.  Before the court is defendant's Motion for Summary Judgment (paper no. 35).  For the reasons stated below, defendant's motion will be granted.

### I.      BACKGROUND

This action arises from fraudulent reimbursements made to credit cards, gift cards, and Macy's EZ exchange cards by former Macy's employee, Lisa McCabe ("McCabe"), at Macy's Neshaminy Mall store in Bensalem Township, Pennsylvania.  McCabe, a Macy's Sales Associate, would process a merchandise return and apply full credit to a customer's credit card, gift card, or EZ exchange card without the customer's return of the merchandise.  In September 2010, Macy's security personnel began an internal investigation.

On November 3, 2010, Frank DeCicco ("DeCicco"), Macy's Director of Loss Prevention, interviewed McCabe at the Neshaminy Mall store.  McCabe admitted making fraudulent reimbursements from April to October 2010 that benefitted: (1) her family members and a friend; and (2) her "on again off again boyfriend," plaintiff DiStefano.  DeCicco informed McCabe he had surveillance videos showing her making reimbursements with no customer present, but one video showed McCabe with an unknown man.  McCabe told DeCicco the man was DiStefano and she confirmed that the video showed her making a fraudulent reimbursement.

1

Macy's security personnel drafted a "Loss Prevention Statement" summarizing the retail fraud; McCabe signed the statement twice and initialed each page.  She added a handwritten paragraph that stated, in part, "this is a true statement . . . No one has made any threats or promises to me."  McCabe claimed her family members and her friend had no knowledge of the fraud and believed McCabe was providing lawful discounts on their purchases, but McCabe directly implicated DiStefano.  In her statement, McCabe admitted that she processed fifty-eight (58) fraudulent reimbursements and specifically mentioned one reimbursement that took place on October 24, 2010, with DiStefano's cooperation:

> On 10/24/10 David DeStefano [sic] purchased a microwave from Oxford Valley [Macy's].  David then came to Neshaminy [Macy's] approximately 30 minutes later and asked me to return the microwave.  I did the return and gave David the EZ exchange card back with $149.99 on it.  David never brought the microwave in and I never took back any merchandise for that return.  I caused a loss to the company of $149.99.

The return transaction is depicted in the video showing McCabe with the man she identified as DiStefano.  DeCicco found the receipts from this October 24, 2010, transaction: one for the purchase of a microwave oven from Macy's Oxford Valley Mall store for $149.99 ($158.99 with tax) at 5:33 p.m. and the other for the return of the same microwave oven at Macy's Neshaminy Mall store at 6:00 p.m., when the surveillance video showed McCabe and DiStefano at McCabe's register.[1]  The receipt for the return transaction contained McCabe's associate number, 71-675680, and register number, 24.  There is no audio with the surveillance video but it shows McCabe and DiStefano exchanging papers; although the return receipt stated the microwave oven was physically returned to McCabe at 6:00 p.m. on October 24, 2010, none is visible in the video.

That night, DeCicco called the Bensalem Township Police Department to report the

---

[1]DeCicco testified there is an approximate "seven minutes, eight minutes" discrepancy between the timestamps shown on the transaction receipts and the timestamp shown on the surveillance video.  He testified that the receipts feature timestamps maintained by a national clock that is uniform in all Macy's stores, while the surveillance video time is kept by a separate clock unique to the Neshaminy Mall store.  The return receipt for the microwave oven is timestamped "06:00 PM 10/24/10" while the surveillance video shows McCabe and DiStefano standing at McCabe's register on "10/24/10" from "17:50:05.12" until "17:51:24.02" (5:50 PM until 5:51 PM).  This reflects a discrepancy of nine to ten minutes from the timestamp on the return receipt.  DeCicco testified there were no other returns at McCabe's register during the hour preceding and the hour following DiStefano's appearance in the surveillance video.

thefts.  When Officer John Catrombon arrived, DeCicco stated there was an employee who had confessed to a crime.  DeCicco informed the officer of his interview with McCabe, the Loss Prevention Statement she had signed, the October 24 receipts for the purchase and return of a microwave oven, and the surveillance video showing McCabe's register when the microwave oven should have been returned.  The officer arrested McCabe and filed an affidavit of probable cause seeking an arrest warrant for DiStefano.  McCabe's employment was later terminated and she made restitution payments to Macy's.

When McCabe was arrested, DiStefano was present in the Neshaminy Mall parking lot.  He alleges he was there to obtain some of his belongings from McCabe's vehicle.  Although no warrant had issued, police arrested DiStefano.  The Police Criminal Complaint filed by Officer Catrombon accused him of three Pennsylvania crimes: (1) Theft by Deception — False Impression, 18 Pa. C.S. §3922 §§A1; (2) Receiving Stolen Property, 18 Pa. C.S. §3925 §§A; and (3) Conspiracy to Commit Theft by Deception, 18 Pa. C.S. §903 §§C.  DiStefano was held in custody overnight.  The next day, he was arraigned, posted bail, and released pending trial.  In August 2011, following several preliminary hearings before a Bucks County magisterial district court, the prosecution withdrew all charges against DiStefano.  He then filed a civil complaint alleging false arrest, false imprisonment, and malicious prosecution against Macy's, not the arresting officer.

In her August 2013 deposition, McCabe stated she did not recall several events from the night of her arrest: (1) her discussion with DeCicco; (2) her writing, signing, and initialing the Loss Prevention Statement; and (3) DiStefano's arrest.  McCabe repeatedly stated she was not contesting or denying the truth of the Loss Prevention Statement but simply could not recall writing or signing it.  She agreed the handwriting and signatures were hers and, when asked whether she had ever been told to sign her name to a blank Loss Prevention Statement, she said she did not remember.  When asked whether DiStefano had "ever [made] a false exchange with [her] at Macy's," McCabe stated she "did not recall" and "I would never do something like that, no."[2]

---

[2]After McCabe claimed she did not recall making restitution payments to Macy's following her arrest, the court asked if McCabe had ever seen a psychiatrist for memory problems or for any other reason or received medical attention for emotional problems.  McCabe testified that she had not.

## II.    DISCUSSION

In deciding a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011).

The court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 256. The movant bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, then the burden shifts to the non-movant, who must offer evidence that establishes a genuine issue of material fact for trial.

There is a common element to all three claims asserted by DiStefano: the absence of probable cause at the time of the alleged tortious conduct. False arrest and false imprisonment are "nearly identical claims" in Pennsylvania and "are generally analyzed together." *Maiale v. Youse*, No. Civ. A. 03-5450, 2004 WL 1925004, at *12, 2004 U.S. Dist. LEXIS 17442, at *40 (E.D. Pa. Aug. 27, 2004). A false arrest is defined as an arrest made without probable cause or an arrest made by a person without privilege to do so. *McGriff v. Vidovich*, 699 A.2d 797, 799 n.3 (Pa. Cmwlth. Ct. 1997). False imprisonment is defined as the detention of another person and the unlawfulness of such detention. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994). Such detention is unlawful if it is a consequence of a false arrest. Malicious prosecution is proven if: (1) defendant initiated a criminal proceeding; (2) ending in plaintiff's favor; (3) without probable cause; and (4) with malice or for a purpose other than bringing plaintiff to justice. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

It is significant that DiStefano was arrested by a Bensalem Township police officer, not DeCicco. Ordinarily, a private person cannot be charged with responsibility for the initiation of proceedings by a public official unless: (1) the person's desire to initiate the proceedings, expressed by direction, request or pressure of any kind, was the determining factor in the

official's decision; or (2) the person knowingly furnished false information. *Cooper v. Muldoon*, No. Civ. A. 05-4780, 2006 WL 1117870 at *5 (E.D. Pa. April 26, 2006). When a private person provides information he or she believes to be true, a law enforcement officer then exercises his or her own discretion to determine whether probable cause exists to initiate proceedings.

Plaintiff's claims must be denied if probable cause existed at the time of his arrest. Probable cause is a reasonable ground of suspicion supported by circumstances sufficient that an ordinary prudent person in the same situation could believe a party guilty of the offense charged. *Miller v. Pennsylvania R. Co.*, 89 A.2d 809, 811-812 (Pa. 1952); *Manley v. Fitzgerald*, 997 A.2d 1235 (Pa. Cmwlth. Ct. 2010); *Turano v. Hunt*, 631 A.2d 822 (Pa. Cmwlth. Ct. 1993).

At the time of DiStefano's arrest, McCabe had just confessed to making many fraudulent reimbursements over a six-month period; she identified each fraudulent transaction to Macy's Director of Loss Prevention DeCicco; she signed and initialed a Loss Prevention Statement detailing the nature and extent of the fraud; she stated DiStefano cooperated with her in the fraudulent reimbursement for a microwave oven on October 24, 2010; she described the details of that transaction and identified DiStefano in a surveillance video showing her register at the time the microwave oven should have been returned; and DeCicco found two transaction receipts corroborating the date, time, item purchased, and amount refunded for that transaction. DeCicco then called the Bensalem Township Police Department and shared what he knew.

DiStefano, attempting to demonstrate a genuine issue of material fact, makes several arguments. First, he argues Macy's did not conduct a "reasonable investigation" or exercise "due care" before calling the police, and if Macy's had given him the "courtesy" and "opportunity" to explain himself, "no charges would have ever been brought against him." Perhaps DiStefano could have offered exculpatory information, but Macy's had no duty to contact him before calling law enforcement. It serves the public interest to contact law enforcement where, based on reasonable suspicion, one believes that a crime has been or is being committed. Whether or not Macy's conducted its investigation to DiStefano's satisfaction is not material and has no bearing on the existence of probable cause.

Second, DiStefano argues that nothing on the purchase or return receipts identifies him. He is correct that no personal information appears on either receipt identifying the individual who purchased or returned the microwave oven. The receipts themselves did not establish probable cause that DiStefano participated in the October 24, 2010, fraudulent reimbursement;

however, probable cause is measured by the totality of the circumstances.  See *Illinois v. Gates*, 462 U.S. 213 (1983).  The court must consider the receipts together with the surveillance video and McCabe's statements.  The absence of information personally identifying DiStefano on the transaction receipts does not present a material factual dispute.

Third, DiStefano notes that the timestamp on the surveillance video (when he was with McCabe at her register) and the timestamp on the return receipt did not exactly match.  DiStefano admits he is present in the video but states he was "only speaking with Ms. McCabe a few moments."  DeCicco did not have to discredit McCabe's statements based on this nine-to-ten minute timestamp discrepancy.  No other reimbursement transactions are depicted in the surveillance video in the hour preceding and the hour following DiStefano's appearance.  The timestamp discrepancy does not establish a material issue regarding the existence of probable cause.

DiStefano also argues that McCabe knowingly provided false information to DeCicco regarding DiStefano's role in the October 24, 2010, fraudulent reimbursement and this information led to his arrest.  DiStefano contends McCabe was acting in the course of her employment as an agent of Macy's when she was interviewed by DeCicco, and Macy's is therefore liable for McCabe's allegedly tortious conduct.  The court need not decide this *respondeat superior* issue because, even if McCabe did knowingly provide false information,  it would not negate the existence of probable cause at the time of the arrest. DeCicco, not McCabe, provided the information to the police, and there is no evidence that DeCicco should have known McCabe's information was false when he provided it.  DeCicco did not rely entirely on her statements but had other evidence corroborating her story.  There also remains no evidence that McCabe's statements were, in fact, false, even though the prosecution withdrew the charges against DiStefano.  McCabe now claims she does not remember her interview with DeCicco or many of the events surrounding her arrest, but the existence of probable cause is determined by facts known at the time of the allegedly tortious conduct.  A confessed accomplice's later denials

or expressions of uncertainty are irrelevant and, in this instance, cast great doubt on McCabe's credibility.[3]

### III.    CONCLUSION

Macy's has demonstrated the absence of a genuine issue of material fact regarding the existence of probable cause.  Although Macy's did not arrest DiStefano, there was probable cause at the time for his arrest.  DeCicco was privileged to contact law enforcement and provide information as he did.  It serves the public interest to share reasonable suspicions about a crime that has been or is being committed, and it is the police who then exercise discretion in assessing whether probable cause exists to make an arrest based on that information.  To show lack of probable cause, DiStefano must do more than point to the withdrawal of charges and assert that Macy's could have conducted a more comprehensive investigation.  Defendant's Motion for Summary Judgment (paper no. 35) will be granted.  An appropriate Order follows.

---

[3]McCabe has testified that DiStefano "constantly" calls and texts her and that he is "crazy." However, when asked whether anyone advised her to testify that she did not recall the events of November 3, 2010, she repeatedly said no.